IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ADAPTIVE AVENUE ASSOCIATES, INC.,**<br><br>     Plaintiff,<br>v.<br><br>**OPTICSPLANET, INC.,**<br><br>     Defendant. | C.A. No. 1:23-cv-15974<br><br>**JURY TRIAL DEMANDED**<br><br>**PATENT CASE** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Adaptive Avenue Associates, Inc. files this Original Complaint for Patent Infringement against OpticsPlanet, Inc. and would respectfully show the Court as follows:

### I. THE PARTIES

1. Plaintiff Adaptive Avenue Associates, Inc. ("Adaptive Avenue" or "Plaintiff") is a Minnesota corporation, having a principal place of business located at 445 Minnesota St. #1500, St. Paul, MN 55101.

2. On information and belief, Defendant OpticsPlanet, Inc. ("Defendant") is a corporation organized and existing under the laws of Illinois with its principal place of business at 3150 Commercial Avenue, Northbrook, Illinois 60062. Defendant has a registered agent Serge Biberman at 2 Northfield Plaza, Suite 201, Northfield, IL 60093.

### II. JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4. On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Illinois Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein. Furthermore, Defendant is subject to this Court's specific and general personal jurisdiction because Defendant is an Illinois corporation.

5. Without limitation, on information and belief, within this state, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein. In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Illinois. Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from services provided to persons or entities in Illinois. Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its providing services within Illinois. Defendant has committed such purposeful acts and/or transactions in Illinois such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6. Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant is a corporation organized in Illinois and therefore resides only in Illinois. Furthermore, Defendant's principal place of business is in Ilinois. On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7. For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

### III. UNITED STATES PATENT NO. 7,171,629

8. Plaintiff incorporates the above paragraphs herein by reference.

9. On January 30, 2007, United States Patent No. 7,171,629 ("the '629 Patent") was duly and legally issued by the United States Patent and Trademark Office. The '629 Patent is titled "Customizable Web Site Access System And Method Therefore." The term of the '629 patent has been adjusted by 252 days. A true and correct copy of the '629 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

10. Adaptive Avenue is the assignee of all right, title, and interest in the '629 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '629 Patent. Accordingly, Adaptive Avenue possesses the exclusive right and standing to prosecute the present action for infringement of the '629 Patent by Defendant.

11. The invention in the '629 Patent relates to systems and methods to enable multiple types of automated navigation through a plurality of website addresses. (Ex. 1 at col. 7:30-35). The inventor recognized inefficiencies of the prior art's ability to deliver automated presentations without needing to reprogram the entire web site and enable targeted content for the specific user. (*Id*. at col. 7:60-67).

12. Mr. Quimby is the sole inventor on the '629 patent. (Ex. 1 at cover; Ex. 2 at ¶2). Mr. Quimby is also the founder, owner, and CEO of Adaptive Avenue. (Ex. 2 at ¶3). A declaration of David Quimby in support of this Complaint is attached hereto as Exhibit 2 and is incorporated herein by reference.

### Background of the Invention

13. Prior to conceiving the inventions disclosed in the '629 Patent, Mr. Quimby received a Bachelor of Arts degree in Economics with emphasis in mathematical economics and developmental economics from the University of California, Los Angeles in 1980 and received a Master of Business Administration with emphasis in organizational behavior and sociotechnical

systems from the University of California, Berkeley in 1987. (Ex. 2 at ¶4). During the early stages of his career, he "gained a passionate interest in the intersection between technology / human behavior and technology / social systems," (*id*. at ¶5), and "assisted in the conception and launch of inter-disciplinary, multiclient initiatives in distributed computing, hyper-distributed computing, and social computing," gaining a keen appreciation for user-centric design, *id*. at ¶6. He also led the adoption of client-server architecture on several projects and worked at the forefront of client-server architecture for several years. (*Id*. at ¶ 7-8).

14. In the mid to late 1990s, Mr. Quimby's interests turned to the emerging phenomenon of the World Wide Web and he began the entrepreneurial pursuit of problems with the usability and navigation of the World Wide Web. (*Id*. at ¶ 8). He realized that the conventional way of viewing information on the World Wide Web was limited. (*Id*.). He "recognized the need for a system that enables Web developers to provide an automated presentation of information in organized sequences without the cost of reprogramming site content." (*Id*.). He also "recognized the need for Web users to view presentations created by Web developers or create their own presentations of Web content without installing development tools." (*Id*.).

15. In 1998, Mr. Quimby founded Virtual Coast Associates, Inc., as a platform for incubating various Web-related opportunities, (*id.* at ¶9), and in 2000, he founded Adaptive Avenue to commercialize the technology that forms the basis of the invention disclosed in the '629 Patent, (*id*. at ¶10).

16. Prior to Mr. Quimby's inventions disclosed in the '629 Patent, "the existing technology for viewing content on the World Wide Web was either monolithic (not granular and customized to the user's particular situation) or tedious and labor-intensive." (*Id*. at ¶ 13). "Likewise, although the existing technology at the time allowed for continuous presentation of

information on the Web (*e.g.*, animation), it did not allow automated presentation of Web page content and it did not allow automated presentation without the cost of reprogramming site content or installing development tools." (*Id*. at ¶14).

### The Invention in the '629 Patent and its Inventive Concepts and Advantages

17. When Mr. Quimby conceived his inventions, the World Wide Web was adapted to flexibly serve individual Web pages, but it was not adapted to serve sequences of Web content. (Ex. 2 at ¶12). The specification of the '629 Patent notes the need for his inventions, in part, as follows:

> [T]here is a need for a web site access system that enables web site owners and developers to provide an automated presentation of desired web page sequences without the costs of reprogramming site content or installing development tools, and that enables web site users to adjust those presentations to their preferences and/or enact their own presentation of web sites of interest, such as through the use of search engine results.

(Ex. 1 at col. 7:60-67). Mr. Quimby's inventions addressed this problem and need, by enabling developers to create Web slide show presentations of information in organized sequences without the cost of reprogramming site content and enabling Web users to view presentations created by Web developers or create their own presentations of Web content without installing development tools. (Ex. 2 at ¶11).

18. In conceiving and reducing his inventions to practice, Mr. Quimby overcame technological problems necessarily rooted in computer technology with the ability to use server-side technology, without installing client-side technology, to create a slide show presentation on the World Wide Web. (*See id.*). For example, although the World Wide Web, in its preexisting client-server architecture, was adapted to flexibly serve individual Web pages, it was not adapted to serve sequences of Web content. (*Id.* at ¶12). Likewise, the problems he addressed were not overcome by implementing existing methods of a slide show, photo slide show, or computer slide

5

show presentation on the Web or by conventionally selecting various information sources to display. (*Id*.). Mr. Quimby authored a feature article in the July 2003 edition of XML Journal (Vol. 4 Issue 7) describing the emerging landscape of the Internet that required a solution like the invention claimed in the '629 patent. (Ex. 2 at ¶19; Ex. 2-1).

19. Mr. Quimby's invention improved existing web technology by helping retain web users' attention and creating a flexible and seamless user experience over client-server architecture. (*See id*. at ¶15). The '629 Patent notes the improvement in Web user and visitor experience as follows:

> [I]t can be seen that besides guiding visitors more quickly to relevant content, the present invention virtually eliminates the attention that visitors normally invest in pointing, clicking, and scrolling through web pages. As such, visitor satisfaction and productivity is increased, i.e., visitors to a web site stay longer, absorb more information, and return more quickly. The model of a passive site and active visitor clicking through pages is replaced by the adaptive presentation model of active site and active visitor. In this active site/active visitor model the site owner or developer can offer a range of tours through a site wherein each tour is adapted to the interests of a wide range of target audiences. Meanwhile, the visitor can have single-click control for pausing at any page to delve more deeply into available content and can also control the pace of presentation as well as select another presentation. Instead of actively pursuing random paths through web sites one click at a time, visitors now have a choice. They can relax and enjoy one or many pre-established presentations—all with the option of stopping and/or diverting anytime they encounter interesting content.

(Ex. 1 at col. 13:30-50).

20. Mr. Quimby's invention provided a solution that included Web-development flexibility and seamless user experience over client-server architecture. (*See* Ex. 2 at ¶15). He "conceived a system and method that used components, such as a composer and a performer, to gather URLs and create a presentation of Web content [and] conceived a system and method that would address the problems rooted in the existing approach to continuous delivery of Web content." (*Id*.). His invention embraced at least three inventive concepts at a high level: "1) rotation of Web pages in organized sequences; 2) sequences of Web pages that can be organized

...

'on the fly' – dynamically, at run time; and 3) use of a Web-service architecture and Extensible Markup Language (XML) to deliver this experience seamlessly without client-side implementation." (*Id*. at ¶16).

21.     The three inventive concepts are found in the claims of the '629 patent. (*Id*. at ¶17). For example in claim 11 of the '629 Patent, the rotation of Web pages in organized sequences is implemented in the combined limitations "establishing a list of URLs in said composer by one of a plurality of list establishment methodologies," "determining a display sequence of said list of URLs in said composer," and "automatically locally displaying the created presentation presented by said performer in a slide show format according to said list and said display sequence, wherein each of said plurality of URLs comprises a slide within said created presentation." (*Id*.). Also in claim 11, the sequences of Web pages that can be organized "on the fly" – dynamically, at run time is implemented in the limitation "establishing a list of URLs in said composer by one of a plurality of list establishment methodologies the plurality of list establishment methodologies comprising manual entry via a user interface portion of the composer and automatic entry by a query-based system." (*Id*.). Also in claim 11, the use of a Web-service architecture and Extensible Markup Language (XML) to deliver this experience seamlessly without client-side implementation is implemented in the limitation "remotely invoking a composer operating on a host server", limitations discussing the operation of the composer that is operating on the host server (*e.g.,* "creating a presentation in said composer, wherein said step of creating comprises the steps of: establishing a list of URLs in said composer"; "determining a display sequence of said list of URLs in said composer"; "determining a duration of display for said list of URLs in said composer"), and the limitation "remotely invoking a performer operating on said host server to present said created presentation." (*Id*.).

7

22. In providing a more seamless way of navigating through the World Wide Web, Mr. Quimby's inventions disclosed in the '629 Patent address a particular challenge to the World Wide Web of retaining website visitors and conveniently and efficiently providing web content to users. The invention created a fundamentally different Web presentation experience without re-architecting the underlying Web technology. (Ex. 2 at ¶16).

23. In addition to the problems addressed by Mr. Quimby's invention, Mr. Quimby "encountered several problems in perfecting the invention and reducing it to practice." (*Id*. at ¶18). For example, "initial prototypes employed a client-side module that required installation. This approach was not scalable, and [he] eventually solved the problem by replacing the client-side module with a parameter-driven JavaScript component running in the Web browser." (*Id*.; *see id*. (providing additional problems solved by Mr. Quimby when perfecting and reducing the inventions to practice)).

24. The commercial embodiment of the invention was endorsed by Dr. Doug Engelbart, a computing pioneer and legendary innovator who invented the computer mouse and the graphical user interface (GUI) in his Augmentation Research Center. (Ex. 2 at ¶¶6, 20; Ex. 2-2).

25. An exemplary embodiment of the code to implement the invention claimed in the '629 patent was submitted on a compact disc with the application leading to the '629 patent. A directory print-out of the exemplary embodiment is included in columns 1-7 of the '629 patent.

### IV. COUNT I
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 7,171,629)

26. Upon information and belief, Defendant has directly infringed claim 11 of the '629 patent in Illinois, and elsewhere in the United States, by performing a method for customizing

access to a plurality of websites using https://www.opticsplanet.com/ ("Accused Instrumentality") (*e.g.*, https://www.opticsplanet.com/).

27. The accusation of infringement is supported by Exhibits A-E. Exhibit A provides a screenshot of exemplary HTML elements associated with the web slide show in Google Chrome DevTools view. Exhibit B provides a screenshot of JPG resources used as slide show images in the web slide show. Exhibit C depicts the slide sequence. Exhibit D provides publicly available code for https://www.opticsplanet.com/, including HTML element tags and URLs corresponding to the images and other resources of the slide show presentation. Exhibit E is a screen capture from a web browser showing the homepage of https://www.opticsplanet.com/, along with the web slide show seen in the upper portion.

28. On information and belief, the Accused Instrumentality performs the step of remotely invoking a composer operating on a host server. For example, a web browser and/or its associated code or functions, or other remote application, may be used to remotely invoke a composer of the Accused Instrumentality. Alternatively, the composer invoker includes the code or component that detects a web user's entry into the web site https://www.opticsplanet.com/, and subsequently invokes a composer that accepts the list of URLs of the web slideshow presentation. Further, the composer operates on a host server comprised of the web server or network of servers of the Accused Instrumentality. Host-side resources are used each time the composer is used to establish a list of URLs. Publicly available code for the website, https://www.opticsplanet.com/, shows that the Accused Instrumentality uses HTML, JavaScript, and CSS to create and/or present a slide show of images. Google Chrome DevTools identifies the <div id="banner-container-inner" element and the HTML elements that comprise the slide show. (*See* Ex. A and D).

29. On information and belief, the Accused Instrumentality performs the step of creating a presentation in said composer. For example, a web-browser and/or its associated code or functions, or other remote application, may be used to remotely invoke a composer of the Accused Instrumentality. The composer of the Accused Instrumentality includes the code, software, features, resources, function(s) and/or any combination thereof responsible for, among other things, establishing the URLs of the web slideshow presentation of https://www.opticsplanet.com/ shown in the exhibits submitted herewith. (*See* Ex. A, C, and D).

30. On information and belief, the Accused Instrumentality performed the step of establishing a list of URLs in said composer by one of a plurality of list establishment methodologies, including manual entry via a user interface portion of the composer and automatic entry by a query-based system. On information and belief, the composer is used to establish a list of URLs by (i) manual entry via any number of user interfaces known to Defendant and/or (ii) automatic entry by querying a database, file, or other resource. These methodologies, either alone or in combination, result in the presence of the plurality of slides and URLs shown in the exhibits submitted herewith.

31. On information and belief, the Accused Instrumentality performs the step of determining a display sequence of said list of URLs in said composer. For example, the resulting display sequence can be seen in the source code and slide sequence provided herewith. (*See* Ex. A and C).

32. On information and belief, the Accused Instrumentality performs the step of determining a duration of display for said list of URLs in said composer. For example, the composer of the Accused Instrumentality accepts a pre-set display duration for each of the plurality of URLs. Each slide of the web slideshow displays on the web browser for a pre-set duration based

on a value or variable accepted by the composer. Navigating to the homepage of https://www.opticsplanet.com/ confirms that the slides of the presentation advance from one slide to the next based on a pre-set display duration.

33. On information and belief, the Accused Instrumentality performs the step of remotely invoking a performer operating on said host server to present said created presentation. On information and belief, the step of remotely invoking the performer occurs any time a web user navigates to https://www.opticsplanet.com/ thereby invoking performance of the web slide show. For example, a web-browser and/or associated code or functions, or even an embedded hyperlink may be used to invoke the performer as a user navigates to https://www.opticsplanet.com/. To the extent users of the Accused Instrumentality other than Defendant are involved in performing this step, such performance is nevertheless attributable to Defendant, because, among other things, Defendant directs or controls performance (*e.g.*, conditions participation in an activity or receipt of a benefit upon performance and establishes the manner or timing of that performance). By way of example, users cannot visit and interact with https://www.opticsplanet.com/ without first invoking the performer. Further, if a https://www.opticsplanet.com/ user fails to remotely invoke the performer, the user will not benefit from viewing Defendant's featured promotional offerings in the form of an automated web slide show presentation.

34. On information and belief, the Accused Instrumentality performs the step of automatically locally displaying the created presentation presented by said performer in a slide show format according to said list and said display sequence. On information and belief, the performer includes the code, resources and/or features on the host server that provide for the automated web slide show of the https://www.opticsplanet.com/ website, including those resources identified in Exhibit A. The performer can be invoked each time a user navigates to the

homepage of the https://www.opticsplanet.com/ website. To the extent users of the Accused Instrumentality other than Defendant are involved in performing this step, such performance is nevertheless attributable to Defendant, because, among other things, Defendant directs or controls performance (*e.g.*, conditions participation in an activity or receipt of a benefit upon performance and establishes the manner or timing of that performance). By way of example, users cannot visit and interact with https://www.opticsplanet.com/ without first automatically locally displaying the created presentation. Further, if a https://www.opticsplanet.com/ user fails to perform this step, the user will not benefit from viewing Defendant's featured promotional offerings in the form of an automated web slide show presentation.

35. On information and belief, the Accused Instrumentality performs the step of wherein each of said plurality of URLs comprises a slide within said created presentation. Each of the plurality of URLs comprises a slide within the created presentation. (*See, e.g.*, URLs in Ex. A, D; *also* Ex. C (exemplary slide sequence)).

36. On information and belief, the Accused Instrumentality performs the step of wherein each slide is automatically displayed to a user, absent human intervention, for the pre-determined display duration as at least a portion of a web page. Each slide of the presentation of https://www.opticsplanet.com/ is automatically displayed to a user, absent human intervention, for the pre-set display duration as at least a portion of a web page. Navigating to the homepage of https://www.opticsplanet.com/ confirms that (i) the slides of the presentation advance from one slide to the next based on a pre-set display duration; and (ii) the slides comprise at least a portion of the home page of https://www.opticsplanet.com/. For example, the "translate3d()" variable in Exhibit A progressively rotates through the values between "-2660px, 0px, 0px" and "-38570px, 0px, 0px" in increments of 1330 for the series of displayed images.

37. Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '629 patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

38. On information and belief, to the extent marking is required, Adaptive Avenue complied with all marking requirements. (*E.g.*, http://www.adaptiveavenue.com/; http://www.adaptiveavenue.com/uspatents/).

## V. COUNT II
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 7,428,707)

39. Plaintiff incorporates the above paragraphs herein by reference.

40. On September 23, 2008, United States Patent No. 7,428,707 ("the '707 Patent") was duly and legally issued by the United States Patent and Trademark Office. The '707 Patent is titled "Customizable Web Site Access System And Method Therefore." A true and correct copy of the '707 Patent is attached hereto as Exhibit 3 and incorporated herein by reference.

41. Adaptive Avenue is the assignee of all right, title and interest in the '707 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '707 Patent. Accordingly, Adaptive Avenue possesses the exclusive right and standing to prosecute the present action for infringement of the '707 Patent by Defendant.

42. The application leading to the '707 patent was filed October 31, 2003, which was a continuation in part of application no. 10/014,929, which issued as the '629 patent. (Ex. 3 at cover). The '707 Patent was first assigned to Adaptive Avenue Associates, Inc. (*Id.*).

43. The invention in the '707 Patent relates to the manner in which a user and/or developer of the World Wide Web presents and/or accesses a web site; and more specifically, to a system and method to enable multiple types of automated navigation through a plurality of website addresses. (*Id.* at col. 1:24-28).

44. The '707 Patent shares an identical specification as the '629 patent and therefore Adaptive Avenue incorporates the background and discussion of the invention in Paragraphs 13-25. Furthermore, the prosecution history of the '707 Patent highlights advantages and unconventional features of the claimed invention including an auto-composing system with "automatic extraction of web page details from a desired web page." (Ex. F at 2).

45. Furthermore, as shown in the prosecution history of the '707 Patent, it was unconventional to automatically compose a slideshow through the automatic extraction of web page details. (Ex. F at 8-9). In the prior art, the slideshow was composed manually and then stored in a file using standard HTML format with a specific name at a specific location. (*Id.*). The examiner agreed that the claim was allowable because the prior art did not disclose that the plurality of hyperlinks found within the desired web page that provides a plurality of URLs, a presentation/rendition text file within the desired webpage that provides a plurality of URLs, a meta tag within the desired webpage that provides a plurality of URLs; and a performer wherein said performer displays said web slide show presentation in order of the plurality of URLs provided by the extracted web page details. (Ex. G at 2).

46. **Direct Infringement:** Upon information and belief, Defendant has been directly infringing claim 7 of the '707 patent in Illinois, and elsewhere in the United States, by performing a method for auto composing a web site using https://www.opticsplanet.com/ ("Accused Instrumentality") (*e.g.*, https://www.opticsplanet.com/).

14

47. The accusation of infringement is supported by Exhibits A-E. Exhibit A provides a screenshot of exemplary HTML elements associated with the web slide show in Google Chrome DevTools view. Exhibit B provides a screenshot of JPG resources used as slide show images in the web slide show. Exhibit C depicts the slide sequence. Exhibit D provides publicly available code for https://www.opticsplanet.com/, including HTML element tags and URLs corresponding to the images and other resources of the slide show presentation. Exhibit E is a screen capture from a web browser showing the homepage of https://www.opticsplanet.com/, along with the web slide show seen in the upper portion.

48. On information and belief, the Accused Instrumentality performs the step of composing a presentation for a desired web page by creating a list of URLs. Dynamic server-side components on Defendant's web servers can be used to display different data, such as different images in the web slideshow presentation, depending on variable values given to the page on the web server, before the web page is sent to the web browser to be displayed. The composer of the Accused Instrumentality automatically extracts web page details in order to display the slideshow images. The Accused Instrumentality creates a presentation from the URLs that are seen in the available source code (*see* Ex. D). Publicly available code for the web site, https://www.opticsplanet.com/, shows that the Accused Instrumentality uses HTML, JavaScript, and CSS to create and/or present a slideshow of images. Google Chrome DevTools identifies the <div id="banner-container-inner" element and the HTML elements that comprise the slideshow. (*See* Ex. A and D).

49. On information and belief, the Accused Instrumentality performs the step of composing a presentation for a desired web page by creating a list of URLs, wherein said step of composing comprises (a) automatically extracting a plurality of hyperlinks from the desired web

page, wherein the plurality of hyperlinks provides the URLs, (b) automatically extracting a presentation/rendition text file from said desired web page, wherein the text file provides said URLs, or (c) automatically extracting a meta tag from the desired web page, wherein said meta tag provides said URLs. The desired web page is https://www.opticsplanet.com/, which includes "web page details" (*e.g.*, the addresses of other web pages that a web user may want to access). The plurality of hyperlinks and corresponding web pages that get automatically extracted and automatically invoked in a user's web browser are the image URLs (*see* Ex. C).

50. On information and belief, the Accused Instrumentality includes the step of automatically displaying the presentation, wherein the presentation is presented in order of the created list of URLs. The step of automatically displaying the presentation in the Accused Instrumentality includes the software components that load and advance the URLs to be displayed. The step of automatically displaying the presentation in the Accused Instrumentality is activated by a web user entering the web site https://www.opticsplanet.com/. The step of automatically displaying the presentation in the Accused Instrumentality serves and presents the web slideshow to the web user (*see* Ex. A, B, and C). For example, the "translate3d()" variable in Exhibit A progressively rotates through the values between "-2660px, 0px, 0px" and "-38570px, 0px, 0px" in increments of 1330 for the series of displayed images.

51. Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '707 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

52. On information and belief, to the extent marking is required, Adaptive Avenue complied with all marking requirements. (*E.g.*, http://www.adaptiveavenue.com/; http://www.adaptiveavenue.com/uspatents/).

## V. JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a. Judgment that one or more claims of United States Patent No. 7,171,629 have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

b. Judgment that one or more claims of United States Patent No. 7,428,707 have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

c. Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

d. That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

e. That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

November 15, 2023

DIRECTION IP LAW

<u>/s/ Steven G. Kalberg</u>
David R. Bennett (IL Bar No.: 6244214)
Steven G. Kalberg (IL Bar No.: 6336131)
PO Box 14184
Chicago, Illinois 60614-0184
Telephone: (312) 291-1667
dbennett@directionip.com
skalberg@directionip.com

*Attorneys for Plaintiff*
*Adaptive Avenue Associates, Inc.*